## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
## 3:15-cv-00440-RJC

| | | |
|---|---|---|
| **MURIEL S. BROOKS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **ORDER** |
| **NANCY A. BERRYHILL,** | ) | |
| **Acting Commissioner of** | ) | |
| **Social Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| ——————————————————— | ) | |

**THIS MATTER** comes before the Court on Plaintiff's Motion for Summary Judgment,

(Doc. No. 6), and Memorandum in Support, (Doc. No. 7), and Defendant's Motion for Summary

Judgment, (Doc. No. 9), and Memorandum in Support, (Doc. No. 10).

## I.  BACKGROUND

### A.  Procedural Background

Plaintiff Muriel S. Brooks ("Plaintiff") seeks judicial review of Carolyn W. Colvin's

("Defendant" or "Commissioner") denial of her social security claim.  (Doc. No. 1).  On March

16, 2012, Plaintiff filed an application for a period of disability and disability insurance benefits

("DIB") under Title II of the Social Security Act, 42 U.S.C. § 405 et seq.  (Doc. Nos. 5 to 5-13:

Administrative Record ("Tr.")  at 71).  Plaintiff alleged an inability to work due to disabling

conditions beginning on December 9, 2010.  (Id. at 145–46).  The Commissioner denied

Plaintiff's application initially on July 16, 2012, and again after reconsideration on October 10,

2012.  (Id. at 88–91, 93–96).  Plaintiff filed a timely written request for a hearing.  (Id. at 97–98).

On April 8, 2014, Plaintiff, represented by counsel, appeared and testified at a hearing before an Administrative Law Judge ("ALJ").  (Id. at 31–59).  The ALJ issued a decision on July 3, 2014, denying Plaintiff's claims.  (Id. at 13–30).  Plaintiff filed a request for review of the ALJ's decision on or about September 8, 2014, which was denied by the Appeals Council on July 25, 2015.  (Id. at 12, 8–10).  Therefore, the July 3, 2014 ALJ decision became the final decision of the Commissioner.

Plaintiff's Complaint seeking judicial review and a remand of her case was filed in this Court on September 23, 2015.  (Doc. No. 1).  Plaintiff's Motion for Summary Judgment, (Doc. No. 6), and Plaintiff's Memorandum in Support, (Doc. No. 7), were filed February 8, 2016; and Defendant's Motion for Summary Judgment, (Doc. No. 9), and Defendant's Memorandum in Support, (Doc. No. 10), were filed May 9, 2016.  Plaintiff did not file a response to Defendant's Motion for Summary Judgment and the time for doing so has passed.  The pending motions are ripe for adjudication.

B.    Factual Background

The question before the ALJ was whether Plaintiff was under a "disability" as that term of art is defined for Social Security purposes, at any time between December 9, 2010, and the date of his decision on July 3, 2014.[1]  (Tr. at 16).  To establish entitlement to benefits, Plaintiff has the burden of proving that she was disabled within the meaning of the Social Security Act.  Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).  The ALJ concluded that Plaintiff was not under a disability at any time from December 9, 2010, through the date of his decision, July 3,

---

[1]    Under the Social Security Act, 42 U.S.C. § 301, et seq., the term "disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (quoting 42 U.S.C. § 423(d)(1)(A)).

2014.  (Tr. at 13–30).

The Social Security Administration has established a five-step sequential evaluation process for determining if a person is disabled.  20 C.F.R. § 404.1520(a).  The five steps are:

(1) whether claimant is engaged in substantial gainful activity—if yes, not disabled;

(2) whether claimant has a severe medically determinable physical or mental impairment, or combination of impairments that meet the duration requirement in § 404.1509—if no, not disabled;

(3) whether claimant has an impairment or combination of impairments that meets or medically equals one of the listings in appendix 1 and meets the duration requirement—if yes, disabled;

(4) whether claimant has the residual functional capacity ("RFC") to perform his or her past relevant work—if yes, not disabled; and

(5) whether considering claimant's RFC, age, education, and work experience he or she can make an adjustment to other work—if yes, not disabled.

See 20 C.F.R. § 404.1520(a)(4)(i-v).  In this case, the ALJ determined at the fifth step that Plaintiff was not disabled.  (Tr. at 20–25).

Specifically, the ALJ first concluded that Plaintiff had not engaged in any substantial gainful activity since December 9, 2010, the alleged disability onset date.  (Id. at 18).  At the second step, the ALJ found that Plaintiff had the following severe impairments: "anxiety, panic attacks, depression, urinary incontinence, status-post tailbone injury, migraine headache, and obesity."  (Id.).  At the third step, the ALJ determined that Plaintiff did not have an "impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. 404, Subpart P, Appendix 1."  (Id. at 19–20).

Next, the ALJ assessed Plaintiff's RFC and found that she retained the capacity to perform "light" work. (Id. at 20–25). Specifically, the ALJ found that Plaintiff retained the RFC to perform as follows:

> "light" work as defined in 20 CFR 404.1567(b) except she must be allowed the option to sit or stand at will; she cannot climb ropes, ladders, scaffolds, ramps, or stairs; and she is further limited to simple, routine and repetitive tasks in a nonproduction environment with no contact with the public.

(Id. at 20).[2] In making his finding, the ALJ specifically stated that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." (Id.). The ALJ further opined that he "considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-3p." (Id.).

At the fourth step, the ALJ found that Plaintiff could not perform her past relevant work. (Id. at 25). At the fifth and final step, the ALJ concluded, based on the testimony of a vocational expert and "considering [Plaintiff's] age, education, work experience, and residual functional capacity, [that] there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." (Id.). Therefore, the ALJ concluded that Plaintiff was not under a "disability," as defined by the Social Security Act, at any time between December 9, 2010, and the date of his decision on July 3, 2014. (Id. at 26).

## II.     STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the

---

[2]       Light work is defined as lifting or carrying up to ten pounds frequently and up to twenty pounds occasionally. 20 C.F.R. 404.1567(b). "Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." Id.

Commissioner's decision, <u>Richardson v. Perales</u>, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards, <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990); <u>see also</u> <u>Hunter v. Sullivan</u>, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The District Court does not review a final decision of the Commissioner de novo. <u>Smith v. Schweiker</u>, 795 F.2d 343, 345 (4th Cir. 1986); <u>King v. Califano</u>, 599 F.2d 597, 599 (4th Cir. 1979); <u>Blalock v. Richardson</u>, 483 F.2d 773, 775 (4th Cir. 1972). As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In <u>Smith v. Heckler</u>, the Fourth Circuit noted that "substantial evidence" has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting <u>Perales</u>, 402 U.S. at 401); <u>see also</u> <u>Seacrist v. Weinberger</u>, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence . . . .").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. <u>Hays v. Sullivan</u>, 907 F.2d at 1456; <u>see also</u> <u>Smith v. Schweiker</u>, 795 F.2d at 345; <u>Blalock</u>, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome—so long as there is "substantial evidence" in the record to support the final decision below. <u>Lester v. Schweiker</u>, 683 F.2d 838, 841 (4th Cir. 1982).

### III. DISCUSSION

On appeal to this Court, Plaintiff argues that the ALJ erred as a matter of law in denying her claims on three grounds: (1) the ALJ failed to properly determine Plaintiff's mental RFC; (2) the ALJ failed to properly determine Plaintiff's RFC; and (3) the ALJ failed to give good reasons for rejecting a treating physician's opinions. (Doc. No. 7 at 2). The Court reviews each of these in turn.

#### A.     Whether the ALJ's Properly Determined Plaintiff's Mental RFC

Plaintiff argues that the ALJ did not provide a function-by-function analysis of Plaintiff's mental limitations. (Doc. No. 7 at 5–13). Specifically, Plaintiff contends that the RFC finding is unsupported because the ALJ found that Plaintiff had mild restriction in activities of daily living, moderate difficulties in maintaining social functioning, mild difficulties in maintaining concentration limitations in concentration, persistence, or pace, and no episodes of decompensation, each for extended duration, but failed to account for those limitations in Plaintiff's RFC adequately. (Tr. 19 – 20; Doc. No. 7 at 6–7). The Court finds that the ALJ did conduct a proper function-by-function analysis and incorporate the appropriate limitations into his RFC finding.

First, Plaintiff argues that the ALJ's RFC does not include a complete determination of Plaintiff's mental limitations because the ALJ did not perform a function-by-function analysis of Plaintiff's nonexertional mental functions related to the ALJ's broad findings that Plaintiff had mild restriction in activities of daily living and mild difficulties in maintaining concentration, persistence or pace. (Doc. No. 7 at 5–10). Plaintiff argues that the Fourth Circuit's decision in Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015), and SSR 96-8p require an explicit function-by-function analysis even if the restrictions are mild. (Doc. No. 7 at 9–10). Plaintiff also argues

that the <u>Mascio</u> decision requires remand in this case because the ALJ did not complete the appropriate function-by-function analysis for his finding that Plaintiff had moderate difficulties in maintaining social functioning.  (Doc. No. 7 at 10–11).  Defendant asserts that <u>Mascio</u> narrowly applies to moderate limitations in concentration, persistence or pace and does not apply to moderate limitations in social functioning, or mild restrictions and difficulties, which do not raise a presumption of impairment that require specific discussion in the RFC.  (Doc. No. 10 at 6–8).  Defendant further argues that any limitations were accommodated appropriately in the RFC.

In <u>Mascio</u>, the ALJ found that the claimant had moderate difficulties in maintaining concentration, persistence, or pace, but the ALJ's RFC finding, and consequently the hypothetical presented to the VE, limited the claimant to merely "light work."  780 F.3d at 637–38.  In reviewing that case, the Fourth Circuit held that an ALJ must adequately account for a claimant's limitations through a function-by-function analysis.  <u>Id.</u>  Importantly though, the Fourth Circuit declined to adopt a per se rule requiring remand whenever an ALJ does not perform an explicit function-by-function analysis because "remand would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested.'"  <u>Id.</u> at 636 (quoting <u>Cichocki v. Astrue</u>, 729 F.3d 172, 177 (2d Cir. 2013)(per curiuam)).  Therefore, remand may be appropriate "where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review."  <u>Id.</u> (quoting <u>Cichocki</u>, 729 F.3d at 177).

Here, unlike in <u>Mascio</u>, the Court was not "left to guess about how the ALJ arrived at his conclusions."  <u>Id.</u> at 637.  Indeed, the ALJ provided ample evidence, explanation, and detail regarding each of his broad limitation findings.  (Tr. at 19–20).  Regarding the mild restriction in

activities of daily living, the ALJ noted the following: no significant difficulties related to personal care tasks, performance of limited chores, preparation of meals with assistance, trips outside and driving on a daily basis, shopping in grocery stores, driving her son to school every morning. (Id. at 19). Additionally, the ALJ cited to a Third-Party Function Report submitted by Plaintiff's husband and a State Agency consultant's conclusion that Plaintiff had mild difficulties in activities of daily living.

The ALJ's discussion of Plaintiff's moderate difficulties in social functioning contained the following function-related findings: Plaintiff attended her son's basketball games, took her son to school, went grocery shopping, and went to church on a regular basis. (Id.). Plaintiff herself stated that she had no problems in getting along with coworkers, neighbors, friends, or family. (Id.). Finally, Plaintiff's outpatient treatment provider did not indicate that Plaintiff had any behavioral problems or issues with speech or thought process. (Id.).

Lastly, regarding Plaintiff's mild difficulties with concentration, persistence, or pace, the ALJ found that Plaintiff did not have difficulties in following instructions, she could complete tasks, and pay attention for a "normal amount of time." (Id. at 19–20). Additionally, treatment notes did not reveal any cognitive or memory problems and Dr. Ken Wilson only found mild limitations in concentration, persistence, or pace. (Id. at 20). In short, the ALJ's thorough discussion of specific functional limitations shows that the ALJ relied on substantial evidence in determining Plaintiff's RFC and did not err in his analysis.

Furthermore, this case differs from Mascio in two additional ways. First, two of Plaintiff's issues at hand involve only mild restrictions. Mascio dealt with "moderate" restrictions and did not hold that all restrictions, including mild restrictions, be explicitly discussed in terms of RFC. Roberson v. Colvin, 2016 WL 5844148, at *6 (W.D.N.C. Oct. 4,

2016).  Second, the ALJ adequately accommodated Plaintiff's functional limitations by adding restrictions to the light work RFC, limiting Plaintiff to "simple, routine and repetitive tasks in a nonproduction environment with no contact with the public."  (Tr. at 20).  By limiting Plaintiff's RFC to a nonproduction environment and no contact with the public, the ALJ clearly took into account Plaintiff's functional limitations and accommodated them in the RFC.

Therefore, unlike in <u>Mascio</u>, in which the ALJ gave no explanation regarding whether the claimant's mental limitations affected his ability to work, the Court finds that the ALJ in this case sufficiently addressed and accounted for Plaintiff's limitations in broad areas of functioning for evaluating mental disorders and how those limitations affected Plaintiff's ability to perform work-related activities, including her ability to stay on task.  The Court further finds that the ALJ analyzed the record as a whole, including various medical opinions and documents, as well as Plaintiff's testimony about her symptoms, and sufficiently articulated the function-by-function analysis regarding Plaintiff's mental limitations.  Consequently, the Court finds that the ALJ did not err and properly complied with the function-by-function assessment requirements of SSR 96–8p, and that the ALJ's decision is supported by substantial evidence.

B.      <u>Whether the ALJ's Properly Determined Plaintiff's RFC</u>

Plaintiff next contends that the ALJ erred because he gave great weight to the medical records submitted by Plaintiff's treating physicians, but did not explicitly mention Dr. T. Kern Carlton's observation that Plaintiff was not able to do "frequent floor-to-waist lifting."  (Doc. No. 7 at 14; Tr. at 416).  Furthermore, the ALJ did not incorporate that statement as an express functional limitation in Plaintiff's RFC.  (Doc. No. 7 at 14).  Relying on <u>Mascio</u>, Plaintiff argues that "[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other

inadequacies in the ALJ's analysis frustrate meaningful review." 780 F.3d at 636 (internal citation and quotation marks omitted). Defendant counters that Dr. Carlton's observation regarding frequent floor-to-waist lifting is an opinion (and therefore the ALJ did not explicitly give it great weight), light work only requires "occasional" stooping which is consistent with Dr. Carlton's opinion, and that Dr. Carlton's opinion actually supported a light work RFC because he found Plaintiff was able to lift 19 pounds "frequently" from knee to waist, waist to shoulder, and shoulder to overhead. (Doc. No. 10 at 12).

The lifting requirement for light work under the regulations is "lifting or carrying up to ten pounds frequently and up to twenty pounds occasionally." 20 C.F.R. 404.1567(b). Lifting is not specifically defined nor is it broken up into categories such as floor to waist, waist to shoulders, etc. Defendant argues that light work's limitation on stooping adequately accommodated Plaintiff's limitation of no frequent floor to waist lifting. (Doc. No. 10 at 11). The Court agrees. Light work is limited to "occasional" stooping, which is defined as "bending the body downward and forward by bending the spine at the waist" and is required sometimes "particularly when objects below the waist are involved." SSR 85-15, 1985 WL 56857, at *7 (S.S.A.). Dr. Carlton's comment that Plaintiff cannot do "frequent" floor to waist lifting implies that Plaintiff can occasionally do floor to waist lifting, and indeed, Dr. Carlton noted that Plaintiff "was able to lift 25 lbs occasionally from floor to waist and knee to waist." (Tr. at 416). Therefore, Plaintiff could occasionally stoop or lift from floor to waist consistent with light work. Accordingly, even assuming that the ALJ gave great weight to Dr. Carlton's opinion and not just his treatment notes, the RFC of light work accommodated Plaintiff's functional limitation, is supported by substantial evidence, and did not require further discussion.

C.    <u>Whether the ALJ Gave Good Reasons for Giving Little Weight to Treating</u>

<u>Physician's Opinion</u>

Plaintiff finally argues that the ALJ improperly disregarded the opinion of Dr. Allison Evanoff, Plaintiff's primary care physician. (Doc. No. 7 at 17–20). The Fourth Circuit has held that the treating physician rule does not require that a treating physician's opinion automatically be afforded controlling weight. <u>Hunter v. Sullivan</u>, 993 F.2d 31, 35 (4th Cir. 1992). "[A] treating physician's opinion on the nature and severity of the claimed impairment is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." <u>Mastro v. Apfel</u>, 270 F.3d 171, 178 (4th Cir. 2001). Therefore, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." <u>Id.</u> (quoting <u>Craig v. Chater</u>, 76 F.3d 585, 590 (4th Cir. 1996)(upholding ALJ's rejection of treating physician's opinion because the record contained contradictory evidence)).

Pursuant to Social Security Ruling 96–2p an ALJ must "give good reasons in the notice of the determination or decision for the weight given to a treating source's medical opinion." S.S.R. 96–2p, 1996 WL 374188, at *5 (July 2, 1996). Specifically, the "notice of determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." <u>Id.</u> The Fourth Circuit has set forth the following factors to consider when determining the weight of a physician's medical opinion if not according it controlling weight:

     (1) whether the physician has examined the applicant,
     (2) the treatment relationship between the physician and the applicant,

(3) the supportability of the physician's opinion,
(4) the consistency of the opinion with the record, and
(5) whether the physician is a specialist.

Johnson v. Barnhart, 434 F.3d 650, 655 (4th Cir. 2005); 20 C.F.R. § 404.1527(d)(2). Although an ALJ must consider all of these factors, the ALJ does not need to explicitly provide a factor-by-factor analysis or discuss every factor in the decision. Henley v. Astrue, No. 3:11-CV-488, 2012 WL 2804846, at *3–4 (W.D.N.C. July 10, 2012); Warren v. Astrue, No. 5:08-CV-149, 2009 WL 1392898, at *3 (E.D.N.C. May 18, 2009).

Here, the ALJ considered both Dr. Evanoff's treatment notes and her opinion and provided his reasoning for assigning the treatment notes great weight but her opinion little weight. Specifically, the ALJ stated he gave "little weight to the Medical Source Statement submitted by Dr. Evanoff, in which she provides that the claimant cannot handle essentially any basic mental function related to job performance. (Exhibit 11F). This is inconsistent with the medical record as discussed above." (Id.). Earlier in the ALJ's decision, he explained the objective medical evidence negating Dr. Evanoff's opinion, including Dr. Evanoff's own treatment notes. The ALJ noted that Plaintiff reported to Dr. Evanoff "increased symptoms of anxiety . . . in late 2012 and early January 2013," but "[t]reatment notes covering the following show occasional complaints of increased anxiety, but otherwise demonstrate that [Plaintiff] was generally stable." (Id. at 23). Furthermore, Plaintiff's "thought process was noted to be clear with no suicidal ideations or hallucinations" and Plaintiff "had no psychiatric hospitalizations or inpatient treatment throughout the period." (Id.). Outside of Dr. Evanoff's treatment notes, the ALJ also found that, regarding Plaintiff's mental impairments, "treatment notes do not support [Plaintiff's] symptoms of depression, anxiety and panic attacks to the extent alleged. Treatment notes indicate that her symptoms have been well managed under conservative treatment." (Id.).

Therefore, the ALJ met his burden of explanation by clearly stating that he gave little weight to Dr. Evanoff's opinions suggesting that Plaintiff is disabled because they were not consistent with Plaintiff's treatment notes or the totality of the evidence. (Tr. at 24). Moreover, the ALJ appropriately noted that he gave great weight to Dr. Dr. Evanoff's medical records, as well as the medical records from Plaintiff's other treating physicians, Dr. Carlton and Dr. Alexander. (Id.). Although the ALJ did not cite and compare inconsistencies directly with Dr. Evanoff's opinions, he discussed substantial medical and other record evidence from several sources, including Dr. Evanoff's own treatment notes, that was inconsistent with Dr. Evanoff's opinions. (Id. at 20–25). Accordingly, the Court finds that the ALJ properly considered Dr. Evanoff's opinions and provided appropriate explanation regarding why he accorded her opinions little weight, and that the ALJ's "little weight" assignment regarding Dr. Evanoff's opinion is supported by substantial evidence.

## IV.     CONCLUSION

In light of the deferential standard of review applied under the Social Security Act, 42 U.S.C. §§ 405(g), 1383(c)(3), the Court finds that there is substantial evidence to support the Commissioner's final decision.

**IT IS, THEREFORE, ORDERED** that:

1.     Plaintiff's Motion for Summary Judgment, (Doc. No. 6), is **DENIED**;

2.     Defendant's Motion for Summary Judgment, (Doc. No. 9), is **GRANTED**; and

3.     The Clerk of Court is directed to close this case.


Signed: March 29, 2017

Robert J. Conrad, Jr.
United States District Judge